IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| JOHN DAVID LIPSCOMB, | § § § § § § § § § | |
| Plaintiffs, | | |
| v. | | CIVIL ACTION NO. 6:14-cv-50 |
| TOYOTA MOTOR CORPORATION | | JURY DEMANDED |
| Defendant. | | |

### TOYOTA MOTOR CORPORATION'S MOTION TO EXCLUDE NEIL HANNEMANN

TO THE HONORABLE COURT:

Defendant Toyota Motor Corporation ("TMC") seeks to exclude Plaintiff's retained expert witness, Neil Hannemann, because his opinions are unreliable. Plaintiff designated Hannemann to testify that his 2013 Lexus RX350's driver's seat belt system was defective and caused him injury during a March 28, 2013 accident. Hannemann claims that firing the pretensioner on the subject vehicle would have reduced Plaintiff's injuries. Hannemann believes the seat belt's retractor failed to lock or came unlocked during the accident sequence due to undefined vertical forces. Hannemann readily admits there is no physical evidence on the seat belt components to support his opinions, and he concedes he has done nothing to test his theory on the seat belt system that was in the subject 2013 Lexus RX350. Instead, he relies on a "vintage 1990's production retractor" applying purely vertical loads to support his opinion that the retractor did not lock or locked and released.

Under the standards for expert testimony set forth by the United States Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals* and *Kumho Tire Co. v. Carmichael*, Hannemann's opinions are tainted by a weak foundation and are unreliable.

Accordingly, TMC respectfully requests that the Court enter an order excluding Hannemann's testimony, as set forth herein.

## I.  EVIDENCE IN SUPPORT OF MOTION TO EXCLUDE

Exhibit A   Texas Peace Officer Crash report

Exhibit B   Nicholas Durisek's expert report

Exhibit C   Deposition of Plaintiff John Lipscomb

Exhibit D   Neil Hannemann's Expert Report and Rebuttal Report

Exhibit E   Dr. Elizabeth Raphael's Expert Report

Exhibit F   Gregory Miller's Expert Report

Exhibit G   Deposition of Neil Hannemann

## II.  FACTUAL BACKGROUND AND EXPERT OPINIONS AT ISSUE

### A.  Accident Facts

This case arises from an accident that occurred on March 28, 2013, at approximately 10:13 a.m.[1]  On that date, Plaintiff John David Lipscomb ("Plaintiff") was driving his 2013 Lexus RX350 southbound on I-35 in Temple, Texas, when he suddenly veered off-road.[2]  After traveling approximately 1,000 feet down the shoulder, across the access road, through a grassy, undulating field and an old parking lot, Plaintiff crashed into the base of a stone awning in front of a local retail building.[3]  Plaintiff admitted he likely suffered a health complication, which caused the subject accident.[4]  Plaintiff sustained various injuries as a result of the subject accident, including a compression fracture of his L-4 vertebra, fractured distal humerus, fractured ribs, and pseudoaneurysm

---

[1] Exhibit A.
[2] *Id.*
[3] Exhibit B, pp. 5-7.
[4] Exhibit C, at 62:17-63:7.

at the carotid artery level.

### B. Expert Opinions

On November 8, 2013, Plaintiff sued TMC, claiming various defects in the subject 2013 Lexus RX350 caused his injuries and damages. On August 15, 2014, Plaintiff designated Hannemann as his retained technical expert. Hannemann offers the following observations with respect to the subject 2013 Lexus RX350's driver's seat belt system:

- Plaintiff's vehicle traveled off-road and became airborne as it traveled over uneven terrain. As the subject vehicle landed after being airborne, the driver's seat belt retractor either did not lock, or released after locking, allowing some of the belt to spool out. This resulted in Plaintiff being improperly restrained, causing his injuries.

- Independently activated pretensioners and/or reversible pretensioners were both technologically and economically feasible at the time the subject vehicle was manufactured. These designs could have minimized Plaintiff's injuries.[5]

Alternatively, TMC claims that due to Plaintiff's admitted medical event and the lengthy off-road excursion, Plaintiff slumped out of his shoulder belt during the accident sequence, which resulted in several of his injuries.[6] Additionally, based on the physical evidence, TMC contends that the seat belt locked and remained locked throughout the accident sequence.[7]

### III. HANNEMANN'S OPINIONS ARE INADMISSIBLE UNDER *DAUBERT* and *KUMHO TIRE*.

Federal Rule of Evidence 702 requires that testimony in areas involving specialized knowledge, education or experience be from a witness who is truly qualified,

---

[5] *See* Exhibit D.
[6] *See* Exhibit E.
[7] *See* Exhibit F.

and that the testimony be both relevant and reliable.[8]  Under *Daubert*, the district court is charged with certain responsibilities in its gatekeeper function before allowing a witness to offer expert opinion testimony at trial.  The Court must ensure that expert testimony constitutes "good science"[9] and that findings are sufficiently "derived by the scientific method" or otherwise "supported by appropriate validation."[10]

Evidentiary reliability is demonstrated by showing that the knowledge offered is more than speculative belief or unsupported speculation.[11]  While certainty is not required, the knowledge asserted must be based on good scientific grounds.[12]  Admissible evidence must be relevant and reliable; otherwise it cannot assist the trier of fact.[13]  Scientific knowledge requires more than guesswork—it must be grounded in a body of known facts or a body of ideas inferred from such facts; otherwise, reliability is lost and the trier of fact is not assisted by what may be no more than speculation or subjective belief.[14]  Factors the Court may consider in determining reliability of expert testimony include whether the expert's theory or technique (1) can be or has been tested, (2) has been subjected to peer review, and (3) is generally accepted in the relevant community.[15]  The burden is on the proponent of the expert testimony to demonstrate the expert witness had adhered to the standards set forth in *Daubert.*[16]

---

[8] *Daubert v. Merrell Dow Pharmaceuticals. Inc.,* 509 U.S. 579, 113 S. Ct. 2786 (1993); *Kumho Tire Co. v. Carmichael,* 119 S.Ct. 1167 (1999) (applying *Daubert* to a mechanical engineer in product liability case).
[9] *Daubert*, 113 S.Ct. at 2797.
[10] *Id.* at 2795.
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *United States v. Posado,* 57 F.3d 428, 433 (5th Cir. 1995); *Viterbo v. Dow Chemical Company,* 826 F.2d 420, 424 (5th Cir. 1987); *In Re Aircrash Disaster at New Orleans,* 795 F.2d 1230 (5th Cir. 1986); *Claar v. Burlington Northern R. Co.,* 29 F.3d 499 (9th Cir. 1994).
[15] *Kumho Tire,* 119 S.Ct. at 1175.
[16] *See Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

As set forth in more detail below, Hannemann's testimony fails to satisfy these criteria for admissibility.

IV. **HANNEMANN'S CONCLUSORY OPINIONS HAVE NO BASIS IN RESEARCH, TESTING, EXEMPLAR STUDIES, OR SCIENTIFICALLY ACCEPTED MEANS OF EVALUATION, AND ARE ULTIMATELY UNRELIABLE UNDER *DAUBERT*.**

Hannemann is critical of the subject 2013 Lexus RX350's driver's seat belt, specifically that the retractor either locked and released or never locked, ultimately allowing some of the webbing to spool out during the accident sequence.[17] While his opinions are based on the premise that the belt failed to lock properly, Hannemann admitted to not knowing the specifications for locking the subject belt.[18] He also did not know the locking sensitivity for either the inertial or the web sensing features of the subject retractor.[19] Hannemann performed no testing or surrogate work, and never looked at an exemplar vehicle or an exemplar seat belt system.[20] Hannemann also admitted there was no physical evidence on the belt or hardware that the retractor unlocked during the accident sequence.[21] His opinions are rooted in nothing more than speculative belief, and are unreliable.

Without any evidence relevant to the retractor on the subject vehicle, Hannemann relies on five papers to support his opinion of alleged retractor failure and spool out.[22] However, Hannemann could not explain the specifics of the testing behind these papers.[23] He did not know if these papers reflected one series of tests or multiple tests

---

[17] Exhibit D; Exhibit G, at 65:25-66:8; 72:16-21.
[18] Exhibit G, at 71:13-72:7.
[19] *Id.*
[20] *Id.* at 82:2-10.
[21] *Id.* at 76:12-18.
[22] *Id.* at 88:7-21; 89:12-20.
[23] *Id.,* at 88:22-90:5; 91:12-16; 95:18-22.

and admitted most of the tests were related to rollovers.[24] He also admitted the testing did not involve a 2013 Lexus RX350 retractor,[25] and that none of the tests involved an occupant applying tension to the belt.[26] Hannemann could not identify how the web sensing features or inertial sensing features on the tested retractors compared to the subject 2013 Lexus RX350's retractor.[27] Hannemann further admitted the testing involved situations where the vertical component was larger than the longitudinal component,[28] yet he conceded he has done nothing to quantify the vertical forces at any phase in the accident to compare to the testing.[29] Therefore Hannemann cannot relate the conditions in those tests to the subject accident. Based on Hannemann's testimony, his entire opinion rests on the testing of unrelated components with unknown specifications and no tension by a belted occupant where the vertical forces were larger than the longitudinal forces. Such testing is irrelevant to the seat belt system at issue and subject case, and all opinions stemming from the testing should be excluded.

Assuming, *arguendo*, Hannemann has a reliable opinion regarding the subject 2013 Lexus RX350's alleged retractor failure, his opinions regarding the proposed alternative designs are also unreliable. Hannemann testified that the preferred alternative was a resettable pretensioner, which was a feature included with the 2013 Lexus RX350's equipped with the optional pre-collision system ("PCS").[30] While it was his first choice for alternative designs, Hannemann did not know if the PCS or resettable

---

[24] *See* Exhibit G, at 89:22-90:15; 91:8-16.
[25] *Id.* at 91:25-92:2; *see also* Exhibit 8 to Exhibit G, at p. 75 (stating that the retractor tested was a 1990's vintage production retractor).
[26] Exhibit G, at 96:16-19.
[27] *Id.* at 99:16-100:6.
[28] *Id.* at 101:5-9.
[29] *Id.* at 31:7-11.
[30] *Id.* at 37:16-38:4.

pretensioner would have engaged or activated during this accident sequence.[31]  If the resettable pretensioner had activated, Hannemann did not know what the retraction force was on the resettable pretensioner.[32]  He admits, however, that if Plaintiff slipped out of the shoulder belt, a pretensioner would not pull him back into position.[33]  Hannemann's second choice for an alternative design was to lower the threshold of the pyrotechnic pretensioner, separate and apart from the threshold for airbag deployment.[34]  Again, he has no information about the retraction force of this pretensioner,[35] and admits this pretensioner would not pull him back into position.[36]

Hannemann has presented no reliable evidence grounded in scientifically accepted principles that would support his opinion that the subject 2013 Lexus RX350's retractor failed and spooled out.  Instead of performing real world testing, Hannemann's opinions regarding the retractor rely on various studies involving different retractors from the one at issue and with no correlation to the subject accident.  Hannemann did not know the specifications of either the subject retractor or the retractors used in the testing.  Ultimately, Hannemann's chosen methodology of relying on irrelevant testing is not generally accepted in the engineering community as reliable given his ability to look at the actual product, specifications for the product, and conduct testing to verify the proffered theories that are not speculative.  Therefore, all of Hannemann's opinions regarding the seatbelt assembly, including the retractor, should be excluded.

---

[31] Exhibit G, at 44:23-46:5.
[32] *Id.* at 40:17-24.
[33] *Id.* at 44:13-22.
[34] *Id.* at 38:5-19.
[35] *Id.* at 43:8-11.
[36] *Id.* at 44:13-22.

WHEREFORE, PREMISES CONSIDERED, TMC respectfully prays that the Court grant its Motion to Exclude Neil Hannemann, and for such other and further relief to which it may show itself justly entitled.

Respectfully submitted,

/s/ Suzanne G. Meredith
**J. KARL VIEHMAN – LEAD COUNSEL**
State Bar No. 20579390
karl.viehman@bowmanandbrooke.com
**SUZANNE H. SWANER**
State Bar No. 90001631
suzanne.swaner@bowmanandbrooke.com
**SUZANNE G. MEREDITH**
State Bar no. 24063576
suzanne.meredith@bowmanandbrooke.com
**BOWMAN AND BROOKE LLP**
2501 North Harwood Street, Suite 1700
Dallas, TX 75201
Telephone 972.616.1700
Telecopier 972.616.1701

**ATTORNEYS FOR DEFENDANT
TOYOTA MOTOR CORPORATION**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded to all known counsel of record in this cause in accordance with the Federal Rules of Civil Procedure on this 22nd day of October, 2014.

/s/ Suzanne G. Meredith

## CERTIFICATE OF CONFERENCE

I hereby certify that Suzanne G. Meredith conferred with Andrew Counts in compliance with Local Rule CV-7(i) via telephone on October 22, 2014.  Suzanne G. Meredith explained TMC's intention to exclude Hannemann, and Andrew Counts indicated he is opposed to this motion.  The discussions have conclusively reached an impasse and thus require the court's involvement.

/s/ Suzanne G. Meredith