IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| John David Lipscomb, | § | |
| | § | |
|    *Plaintiff*, | § | |
| | § | |
| vs. | § | **Civil Action No. 6:14-cv-00050-JCM** |
| | § | |
| Toyota Motor Corporation, | § | |
| | § | |
|    *Defendant*. | § | |

**PLAINTIFF'S RESPONSE TO TOYOTA MOTOR CORPORATION'S
MOTION TO EXCLUDE NEIL HANNEMANN**

**To the Honorable United States Judge of Said Court:**

COMES NOW, Plaintiff, John David Lipscomb, by and through undersigned counsel, and hereby respectfully asks the Court to deny Toyota Motor Corporation's Motion to Exclude Neil Hannemann (Doc. #36), who is one of Plaintiff's expert witnesses.

The Court should allow the testimony of Plaintiff's engineering expert, Mr. Hannemann, because not only is he extremely well-qualified, but also because his testimony is reliable and will be helpful to the jury.

## I. Introduction

1.  Plaintiff filed his Original Petition in state court against Defendant on November 8, 2013, and Defendant removed the case to federal court on February 28, 2014. Plaintiff's suit against the Defendant is premised upon products liability, and arises out of an automobile accident which occurred on March 28, 2013.

2.  On that date, Plaintiff was driving a 2013 Lexus RX350 (a vehicle designed, manufactured, marketed, assembled, and tested by the Defendant) when, for unknown reasons, control of the vehicle was lost and an accident occurred. Plaintiff has alleged that at the time of the accident, that he was properly seated and properly wearing his 3-point seat belt, but that despite being properly restrained, that he sustained serious injuries when his vehicle failed to protect him.

3.  Texas has long recognized the doctrine of vehicle crashworthiness (sometimes known as "second collision" or "enhanced injury") which holds that an automobile manufacturer can be 100% liable where a defect in the design or manufacture of a vehicle does not cause the original accident, but instead where the vehicle itself does not adequately protect the occupant or where a defect with the vehicle causes an additional injury. *See Turner v. General Motors Corp.*, 584 S.W.2d 844, 848 (Tex. 1979). While there are instances where a defect with a vehicle itself causes an accident and subsequent injuries (for instance, the Ford Explorer/Firestone tires rollovers of several years ago), this case is not one of them. Rather, this case is about whether the Toyota vehicle adequately protected Plaintiff **after** the accident sequence was initiated.

## II. Facts Regarding this Lawsuit

4.  As noted in the material supplied to the Court by Defendant Toyota (Doc. #36-1), both sides agree that Mr. Lipscomb was wearing his seatbelt. Both sides agree that Mr. Lipscomb sustained a variety of injuries during the accident sequence. Both sides agree about the accident reconstruction supplied by Mr. Durisek in his original report (pages 5-12 of Doc. #36-1). However, the main disagreement is about *how* Mr. Lipscomb sustained his injuries and whether the subject seatbelt system performed adequately during the accident sequence.[1]

5.  In support of his allegations, Plaintiff has identified Neil Hannemann, an automotive engineer who has worked for major automobile companies, to address different topics related to the vehicle at issue, such as the seatbelt system design and alternative designs. Defendant apparently concedes Mr. Hannemann's vast qualifications to address these issues, but has chosen to move to exclude him based upon Defendant's belief that his opinions are somehow unreliable. Unfortunately, in attempting to exclude Mr. Hannemann, Defendant Toyota has apparently relied upon an erroneous reading of what is required to have expert testimony admitted, and Defendant has misstated some of his opinions and the bases/reasons for them.

6.  As will be shown in this response, Mr. Hannemann's opinions are relevant, reliable, and will be helpful to the jury. Thus, he should be allowed to testify.

---

[1] As noted throughout the materials, Mr. Lipscomb himself does not remember the accident sequence nor does he remember how he sustained his various injuries. Since he was the only occupant of the vehicle, and since there was no camera inside the vehicle or any eyewitnesses as to how his body moved and how the seatbelt system performed, both sides had to hire expert witnesses to opine about these matters.

## III. Argument

7. On page 5 of its motion, Defendant started out its argument as to why it thinks Mr. Hannemann's opinions are unreliable by stating the familiar refrain that Mr. Hannemann "performed no testing".[2] Defendant's criticisms of Mr. Hannemann go to the weight of his testimony, and not its admissibility, which is prohibited. *Knight v. Kirby Inland Marine, Inc.*, 482 F.3d 347, 354 (5th Cir. 2007). Indeed, in another crashworthiness case of note, the automaker General Motors tried the same tactic but failed. Here is the district court's opinion in that instance:

> GM asserts that Mr. Rosenbluth's testimony is unreliable because it is not supported by any independent testing or data, it is not subject to peer review, and it is not generally accepted. Mr. Rosenbluth has relied on various sources, including academic and government studies. His failure to perform his own independent tests or studies of his theories goes to the weight of his testimony, not to its admissibility.

*Williams v. General Motors Corp.*, 2007 WL 3232292, at *2 (N.D. Ohio Oct. 30, 2007).

8. Although Mr. Hannemann did not perform his own tests in this case, he did rely on other tests as indicated in his report and deposition testimony. Also, as Mr. Hannemann's reports and attached affidavit (**Exhibit "1"**) make clear, Mr. Hannemann relied upon a variety of additional material to support his opinions.

---

[2] There are countless vehicle crashworthiness cases around the country wherein automotive companies have complained that a plaintiff's expert conducted no testing and thus the expert should be excluded on those grounds. However, this argument is routinely rejected by courts because the automotive defendants continually misinterpret what *Daubert*/Rule 702 requires. That is, an expert need not perform tests; rather, all that is required is that an expert's theory be testable. See, e.g., *Benton v. Ford Motor Co.*, 492 F.Supp.2d 874, 878-879 (S.D. Ohio 2007); *McCuller v. DaimlerChrysler Corp.*, 2006 WL 5159183, at *1 (E.D. Tex. 2006) ("*Daubert* does not necessarily require an expert to test the subject product to determine whether it is defective"); *Clay v. Ford Motor Co.*, 215 F.3d 663, 668-69 (6th Cir. 2000) (holding that district court did not abuse its discretion in admitting testimony of engineer who had never even worked in the automotive industry and never tested a Bronco II).

9.     First, after carefully inspecting the subject vehicle (something he would do again later on), Mr. Hannemann did the following:

1. He made a detailed macroscopic study of the available physical evidence, and he reviewed all available documents related to the accident in question;
2. He reviewed published research material regarding design;
3. He examined documents relating to other similar incidents and claims;
4. He reviewed technical drawings;
5. He reviewed testing;
6. He reviewed other documents produced by other manufacturers in similar incidences; and
7. He reviewed proposed alternative designs.

*See* Mr. Hannemann's original report, pages 33-35 of Doc. #36-1.

10.  In addition to the foregoing, Mr. Hannemann relied upon his engineering background and his vast, 30-year experience in the automotive industry. One federal district court in Texas was faced with a similar challenge to an expert in a crashworthiness case, and stated that an engineering expert was allowed to rely upon his background in order to help form his opinions. See *Reynoso v. Ford Motor Co.*, 2005 WL 5994183, *2 (S.D. Texas Sept. 27, 2005); see also *United States v. Young*, 316 F.3d 649, 657 (7th Cir. 2002). Furthermore, the court in *Reynoso* also said that it was enough that the engineering expert reviewed publications, reviewed medical records of the plaintiff, and reviewed the vehicle and photographs of the accident scene. *Id.*, *3. In this case, Mr. Hannemann did all of those things, in addition to going even further. Thus, his opinions are reliable because his methodology was reliable, and any criticisms that Defendant has regarding his conclusions are to be weighed by the trier of fact after careful cross-examination. *Benton*, 492 F.Supp.2d at 879.

11. Federal Rule of Evidence 702 contains the language that an expert's testimony should be based on sufficient facts or data. As illustrated earlier, and as outlined in his reports and affidavit, Mr. Hannemann most assuredly has based his opinions on sufficient facts/data, in addition to his vast experience in the automotive world. Mr. Hannemann has over thirty years of vehicle engineering design, development, testing and evaluation. Moreover, it is uncontroverted that in his work on the *Lipscomb* case, Mr. Hannemann has based his analysis on the available facts and evidence, taking into consideration testing conducted by Toyota in this case, as well as other testing conducted by seatbelt companies.

12. For instance, Plaintiff would point to paragraph 22 of Mr. Hannemann's affidavit:

> My initial report contained my analysis of various items, which provided a bases for my opinions in this case. In addition, my underlying basis for my conclusions are my years of experience in restraint system design analysis, development and testing, vehicle engineering, vehicle design, physics, and crashworthiness analysis. This body of knowledge forms my ability for engineering judgment and knowledge of engineering fundamentals. Engineering judgment and knowledge of engineering fundamentals are used throughout all phases of automotive design, developing, testing, and validation.

*See* ¶ 22 of the Affidavit of Neil Hannemann.

13. It is well-known by federal courts that the *Daubert* inquiry is a flexible one, and of the factors to be considered, none are seen as dispositive or exhaustive. *Smith v. Ford Motor Co.*, 215 F.3d 713, 719 (7th Cir. 2000). One of the factors to be considered in a products liability context is engineering fundamentals, like Mr. Hannemann used. *Egbert v. Nissan North America*, 2006 WL 6503320, *3-4 (D.Utah Mar. 1, 2006).

14. Turning now to Defendant Toyota's other arguments, one of them is that Mr. Hannemann cannot point to physical evidence on the belt which proves that it unlocked. However, Toyota failed to mention that in cases where a safety belt fails to lock, such failure does not leave any physical evidence. *See* ¶ 24 of the Affidavit of Neil Hannemann. Furthermore, it is widely known in the engineering field that seat belts can fail to lock up. *See* ¶ 25. Lastly, testing done by others—which has been peer-reviewed—has been done with other safety belts of a substantially similar design to the safety belt in the subject 2013 Lexus RX350. *See* ¶ 26.

15. In addition to failing to mention that one would not expect to see physical evidence of unlocking or failure to lock on a seatbelt, Toyota also misstated Mr. Hannemann's actual deposition testimony with regards to alternative designs, another area where Toyota claims Mr. Hannemann's opinions are unreliable. Indeed, on pages 6-7 of its motion, Defendant claims that Mr. Hannemann "did not know if the PCS or resettable pretensioner would have engaged or activated during this accident sequence." However, ¶ 39 of his affidavit and the attached, quoted section of his deposition show that he **does** know.

16. Not content with misstating his deposition testimony regarding the resettable pretensioner, Toyota compounded its error on page 7 of its motion by stating that, "He [Mr. Hannemann] admits, however, that if Plaintiff slipped out of the shoulder belt, a pretensioner would not pull him back into position." This is manifestly untrue. Paragraph 40 of Mr. Hannemann's affidavit deals with this error, and provides the exact exchange where Mr. Hannemann was asked a different question.

17. Defendant Toyota concludes its motion by stating that, "Ultimately, Hannemann's chosen methodology of relying on irrelevant testing is not generally accepted in the engineering community as reliable given his ability to look at the actual product, specifications for the product, and conduct testing to verify the proffered theories that are not speculative." Curiously, to support this assertion, Defendant Toyota did not attach an affidavit from any engineer, such as Gregg Miller, whom Toyota has retained to testify on its behalf. One wonders why Mr. Miller did not provide an affidavit asserting that Mr. Hannemann's methodology was flawed. The answer, of course, is that Mr. Miller would not say such a thing, given the fact that he would be readily cross-examined at length regarding any supposedly deficient methodology used by Mr. Hannemann.

18. Additionally, Mr. Hannemann himself addressed his methodology in his affidavit (in addition to what he addressed in his reports and deposition testimony), by stating that:

> Additionally, Toyota is critical that I did not perform testing, surrogate work, or an exemplar inspection. The testing criticism disregards the previously discussed, peer reviewed testing that I am relying on. There was no need to perform a surrogate study as part of my methodology. The need for an exemplar inspection was not necessary as Toyota did provide drawings of the restraint components of the RX350 (albeit, without the specifications that Toyota implies that they provided and which it is seemingly now saying are relevant).

*See* ¶ 35 of Mr. Hannemann's affidavit. *See also* paragraphs 38 and 50 of his affidavit wherein he discusses his methodology.

19. In this matter, Mr. Hannemann's opinions are not based on ipse dixit, pure conjecture, or Mr. Hannemann's say-so. Further, they are not based on whim, fantasy, or junk science. Instead, Mr. Hannemann's opinions are based upon a reasonable degree of engineering probability.

20. After having reviewed a myriad of materials and evidence, Mr. Hannemann then proceeded to perform a failure analysis to determine what happened. The method he used is the same as that used by other automotive engineers, and that he has used in his professional work while in the automotive industry. Mr. Hannemann examined all possible causes of what happened and performed what might be analogized to the "differential diagnosis" done by a physician who is trying to determine the cause of an illness and how best to treat it. Mr. Hannemann looked at all possible causes and eliminated those that were not probable, given the facts and circumstances, physical evidence, and test data.

21. Once Mr. Hannemann had determined the most likely cause(s), he then evaluated alternative designs or conditions, which would have precluded the type of failure that caused Mr. Lipscomb's injuries.

22. In this case, Mr. Hannemann performed a standard engineering failure analysis, he applied the laws of physics, he used the scientific method, and he followed standard industry accepted procedures for evaluations of this type. As a result of this evaluation, Mr. Hannemann concluded that the Toyota vehicle was defective and unreasonably dangerous.

23. With respect to alternative designs, again, Mr. Hannemann has vast expertise in almost every area of an automobile. One federal court of note admitted the testimony of an expert regarding alternative designs even though the expert did not "create prototypes or drawings of any of his proposed safety devices," nor did he "test or review others' tests of any of these devices." *Bah v. Nordson Corporation*, 2005 WL 1813023 (S.D.N.Y. 2005). The court also observed that the expert had over twenty years of experience in designing machines similar to the one at issue, and it accordingly ruled that the expert could testify.

24. Aside from the district court in *Bah*, other federal courts have stated that all an expert need do is testify "that a reasonable alternative design could have been practically adopted at the time of sale." *Martin v. Michelin North America, Inc.*, 92 F.Supp. 745, 753 (E.D. Tenn. 2000). There is no question that Mr. Hannemann's alternative designs could have been practically adopted when the subject Toyota was sold since one of Mr. Hannemann's alternative designs was an option on the very same vehicle at issue in this case. Noticeably absent from Defendant's motion is any affidavit from any of Defendant's experts testifying that Mr. Hannemann's alternative design could not have been used on the Toyota.

25. The 7th Circuit has held that while testing an alternative design may be advantageous, testing is not mandatory because the *Daubert* inquiry is a flexible one. *Cummings v. Lyle Indus.*, 93 F.3d 362, 368-69 (7th Cir. 1996). And, the Seventh Circuit noted that experts can rely on data generated by others, experts can make proper personal observations, or an expert can take other appropriate actions. *Id.*, at 369.

## IV. Conclusion and Prayer

26. In discussing Fed. R. Evid. 702 and *Daubert*, the Eighth Circuit has stated that, "the rejection of expert testimony is the exception rather than the rule." *Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1100 (8th Cir. 2006) (citing Fed. R. Evid. 702 advisory committee's note). Furthermore, the Eighth Circuit has also recently stated that there are legions of cases which have held that expert testimony under *Daubert* should be liberally admitted. *Johnson v. Mead Johnson & Co., LLC*, 754 F.3d 557, 562 (8th Cir. 2014).

27. Additionally, a party need not prove that the expert's opinions are correct; all that need be done by the side proffering the expert is to prove the reliability by a preponderance of the evidence. *Moore v. Ashland Chem. Co., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) *cert denied*, 526 U.S. 1064 (1999).

28. In this case, Mr. Hannemann's reports, his deposition testimony, and his attached affidavit clearly meet the preponderance of the evidence standard, and it should be up for the jury, after vigorous cross-examination, to determine which side's theory of the case is correct.

29. Accordingly, for the reasons presented in this response, Plaintiff respectfully asks the Court to deny Defendant Toyota's motion to exclude the testimony of Plaintiffs' expert, Neil Hannemann. Not only is Plaintiff's expert extremely well-qualified, but his testimony is relevant, reliable, and will be helpful to the jury.

        Respectfully submitted,

        **The TRACY firm**

         /s/ Andrew G. Counts
        E. Todd Tracy (Attorney-in-Charge)
        State Bar No. 20178650
        EToddTracy@vehiclesafetyfirm.com
        Stewart D. Matthews
        State Bar No. 24039042
        SMatthews@vehiclesafetyfirm.com
        Andrew G. Counts
        State Bar No. 24036408
        ACounts@vehiclesafetyfirm.com
        5473 Blair Road, Suite 200
        Dallas, Texas  75231
        (214) 324-9000 – Phone
        (972) 387-2205 – Fax

        **Attorneys for Plaintiff**

## CERTIFICATE OF SERVICE

    I hereby certify that on the 31st day of October, 2014, I caused to be electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Western District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

         /s/ Andrew G. Counts
        E. Todd Tracy
        Stewart D. Matthews
        Andrew G. Counts